UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALFONZO C. TREADWELL,

    Petitioner,

Case No. 13-CV-1409-PP

v.

BRIAN FOSTER,

    Respondent.

**DECISION AND ORDER DENYING PETITION FOR WRIT OF
*HABEAS CORPUS* (DKT. NO. 1)**

Petitioner Alfonzo Treadwell, representing himself, filed a petition for a writ of *habeas corpus* under 28 U.S.C. §2254, seeking relief from the sentence imposed as a result of his 2010 conviction for first-degree reckless homicide, party to a crime. Dkt. No. 1. The parties have briefed the petition. Below, the court considers the petitioner's challenge to the validity of his guilty plea and his challenge to the sufficiency of the evidence, concludes that the challenges are without merit, and dismisses the petition.

**I.    FACTUAL BACKGROUND**

    A.    *State Proceedings*

The petitioner was charged in Milwaukee County with one count of first-degree reckless homicide and two counts of first-degree recklessly endangering safety with the use of a dangerous weapon, as a party to a crime. Dkt. No. 18-4

at 3. The Wisconsin Court of Appeals recounted the facts that gave rise to the charges:

> Several days before the homicide, someone fired more than twenty shots into [Omar] Smith's home. Smith later learned the "Deuce Squad" was responsible. [The petitioner], a friend of Smith's, was angered by the shooting because he could have been at Smith's house when it happened. On the day of the homicide, [the petitioner] was at Smith's home when Smith came up to him and said, "Come on with the heat." Smith intended to go scare the "Deuce Squad" members. [The petitioner] went willingly with Smith, arming himself with a .45-caliber handgun while Smith carried a 9mm semiautomatic handgun.
>
> [The petitioner] and Smith got into the back seat of a car driven by a third person. As they traveled, [the petitioner] loaded eight bullets into his weapon and cocked it so that he could be ready to fire when he got out of the car. When they arrived at their destination, [the petitioner] immediately got out, firing the first shots in the incident toward a house where people were standing outside. [The petitioner] said he saw "Ricky" standing nearby and fired two or three shots at him, plus four or five shots at someone in a black car in front of the house. When his gun was empty, [the petitioner] heard two more gunshots but, now knowing their source, he fled the scene. Two bystanders were injured and a third was killed, evidently by one of Smith's 9mm bullets. Eight .45-caliber casings were recovered from the scene.

Dkt. No. 18-4 at 2.

The petitioner and the state conducted plea negotiations, which resulted in the petitioner pleading guilty to the homicide charge, and the state dismissing the reckless-endangerment charges and agreeing to recommend no more than twenty-five years confinement. Dkt. No. 18-4 at 3. The plaintiff pled guilty, and on February 12, 2010, the Milwaukee County Circuit Court entered a judgment of conviction against the petitioner for first-degree reckless homicide by use of a dangerous weapon, as a party to the crime. Dkt. No. 18-1

2

at 1. The court sentenced the plaintiff to serve twenty-five years of initial confinement and fifteen years of extended supervision. Id.

At the plea colloquy, the circuit "had the benefit of a plea questionnaire/waiver of rights form in which [the petitioner] indicated he had completed the ninth grade and lacked a high school diploma or equivalent." Dkt. No. 18-4 at 5. The circuit court asked the petitioner whether he had reviewed this form with his counsel, understood it, and thought the answers were true—the petitioner answered each question in the affirmative. Id. The circuit court also asked the petitioner whether he had used any drugs or alcohol in the preceding twenty-four hours. Id. To establish that the petitioner understood his party-to-a-crime liability, the circuit court explained each element of the offense (including the elements of party-to-a-crime liability); the petitioner confirmed that he understood those elements. Id. at 5-6. The circuit court also referenced the fact that the petitioner's lawyer had attached to the plea questionnaire the jury instructions for the offenses, which bore the petitioner's signature. The court asked whether the petitioner had understood these documents when he'd gone over them with his lawyer, and the petitioner said that he had understood. Id. at 6. Finally, because the petitioner, his lawyer and the state all agreed that the criminal complaint supplied an accurate factual basis for the plea, the circuit court relied on the complaint to determine that the plea was factually supported. Id. at 6-7.

After he was sentenced, the petitioner (now representing himself) filed a post-conviction motion seeking to withdraw his plea or, alternatively, asking to

be resentenced. Id. at 3. He argued, in part, that the circuit court had not assessed his level of education and general comprehension to determine his ability to understand the plea process, "and that this somehow meant that he did not understand how he aided and abetted Smith in a reckless homicide." Id. The circuit court denied the motion. Id. The Wisconsin Court of Appeals affirmed the circuit court's ruling. Id. at 1. The Wisconsin Supreme Court denied the petition for review. Dkt. No. 18-7.

    2.    *Federal Proceedings*

The petitioner then filed this *habeas* petition. Dkt. No. 1. In the petition, he argued that the circuit court violated Wis. Stat. ¶971.08 when it took his plea, id. at 6; that the circuit court did not "[d]etermine the extent" of his education "and general comprehension so as to assess" his capacity to understand the issues at the plea hearing, id. at 7; that the circuit court did not alert him "to the possibility that an attorney may discover defense or mitigating circumstances that would not be apparent to a layman such as" the petitioner, id. at 8; and that the court did not '[e]nsure] his understanding "of the nature of the crime with which he [was] charged and the range of punishment to which he [was] subjecting himself to by entering a plea," id. at 9.

At the screening stage, Judge Griesbach (then the judge assigned to the case) concluded that the petitioner's arguments boiled down to two claims: that he did not enter his plea knowingly and voluntarily, and that his attorney was ineffective. Dkt. No. 12 at 2. Judge Griesbach found, however, that the

4

petitioner had not exhausted his state remedies as to an ineffective assistance claim. Id. at 3. Judge Griesbach gave the petitioner the opportunity to either ask him to stay the *habeas* proceeding so that he could go to state court to exhaust on the ineffective assistance claim, or go forward only on the claim that his plea was not voluntary. Id. at 4. The petitioner responded that he wanted to go forward only as to the claim he exhausted in state court: "whether the plea was made knowingly, intelligently and voluntarily and whether the state chose to unconstitutionally apply liability for [the petitioner] being a party to the crime of 1st-degree reckless homicide." Dkt. No. 13 at 2. The petitioner chose not to proceed on the ineffective-assistance-of-counsel claim.

## II. STANDARD

To prevail on a petition for a writ of *habeas corpus*, the petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §2254(d). If the state appellate court ruled on the merits of the claims, then the petitioner must go a step further, and show that his detention is the result of a state court decision that was (a) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (b) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id.; see Gonzales v. Mize, 565 F.3d 373, 379 (7th Cir. 2009) ("We review the decision of the last state court that substantively adjudicated each claim."). This standard is highly deferential to state courts. Harrington v. Richter, 562 U.S. 86, 101 (2011). In order for a petitioner to

5

prevail on a *habeas* claim, the state appellate court's ruling must be "objectively unreasonable, not merely wrong; even clear error will not suffice." White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1702 (2014) (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)(internal quotations omitted)). The ruling must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

## III. DISCUSSION

### A. The Petitioner's Arguments

In his brief in support of the petition, the plaintiff first argues that the state conceded in its appellate brief in state court that the circuit court judge did not expressly ask the petitioner about his educational history. Dkt. No. 23 at 17. He indicates that instead, the judge relied on the plea questionnaire, which stated that the petitioner had a ninth-grade education. Id. The petitioner filed a copy of the plea questionnaire; in the field for age, someone has handwritten "20," and in the field for schooling, someone has handwritten "9th grade," and scratched through the word "years" before the words "of schooling." Dkt. No. 2-4 at 1. The petitioner states in his brief that "it later turned out that while the written questionnaire listed a completed 9th-grade education, [the petitioner] actually had a 5th-grade reading comprehension level." Id. He provides no support for this assertion.

Next, the petitioner challenges the Court of Appeals' conclusion that because the circuit court judge asked about drugs or alcohol, it made sure that

6

the petitioner understood what was going on. Dkt. No. 23 at 17. The petitioner claims that an inquiry into whether one has taken drugs or alcohol in the twenty-four hours before a plea "is woefully superficial and perfunctory." Id. The petitioner says (without providing any supporting evidence) that he stated, "I ain't understand that," and claims that this statement shows that he did not understand what was going on during the plea colloquy. Id. at 18.

The respondent attached to his response to the petition a copy of the brief that the petitioner had filed in the state appeals court. Dkt. No. 18-2. In that brief, the petitioner appears to have quoted extensively from what he indicates was the plea colloquy. Id. at 11. Because neither party provided this court with a transcript of the plea colloquy, the court does not know whether the petitioner's quoted language is accurate. Assuming for the moment that it was, however, the petitioner quoted the following:

> THE COURT: Has anyone made – Before I get to that; in addition, the other rights that you give up are out-lined in the Plea Addendum that you signed, and those are the right to challenge the evidence, such as the constitutionality of the police evidence, and your right to give up whatever defenses you might have had to this. Do you understand you give those up as well?
>
> DEFENDANT: I ain't understand that.
>
> THE COURT: You didn't understand that?
>
> DEFENDANT: No. . . .

Id. at 12. The appellate brief indicates that at this point in the proceedings, the petitioner had explained to the circuit court that he had tried to get his lawyer to explain to him how he could be guilty of killing someone when the evidence

7

showed that it was Smith, not the petitioner, who'd shot the victim. Id. He claims to have told the circuit court, "I understand, but I don't understand." Id. at 13.

Third, the plaintiff argues that he indicated in the state proceedings that he did not understand that he could be found guilty of "causing" someone's death under an aiding and abetting theory. Id. He goes into some detail about how he did not provide Smith with the murder weapon or the bullets, did not use the murder weapon himself, did not give Smith a ride to the scene of the crime, and wasn't accountable for Smith's acts. Id. at 19. The petitioner argues that his case "resembles" a case in which he would be "actually innocent" of "causing the death of another human being" under an aiding-and-abetting or party-to-a-crime theory. Id. at 21. The petitioner devotes a good deal of his brief to his argument that the state was wrong to charge him with homicide under an aiding-and-abetting theory. His brief reads as though he is contesting the sufficiency of the evidence to support his conviction under an aiding-and-abetting theory.

Finally, the petitioner challenges the sentence that the state court imposed. Id. at 26-28. He argues that the state court did not provide a sufficient reason for sentencing him to forty years, and that the sentence violated the Eighth Amendment because it was "grossly disproportionate" to his level of culpability. Id. at 26.

B.  The Respondent's Arguments

In his opposition brief, the respondent argues that the court of appeals directly addressed the petitioner's claim that the state court had not considered his educational level. Dkt. No. 25 at 10. The respondent asserts that the petitioner has identified no constitutional requirement that a court "personally question" a defendant about his educational level in order to take a plea. Id. The respondent does not address the fact that Wisconsin's plea statute—Wis. Stat. ¶971.08—does not explicitly require a court to ask about a defendant's educational background. He does mention Federal Rule of Criminal Procedure 11, noting that a now-overruled state court case, Ernst v. State, 43 Wis. 2d 661 (1969), had required state courts to follow the procedures laid out in that rule. Dkt. No. 25 at 11. While Rule 11 does not require a federal court to enquire as to a defendant's educational background either, the respondent points out that the Seventh Circuit has held that violating one of Rule 11's requirements does not necessarily, by itself, warrant *habeas* relief. Id. (citing, e.g., Morales v. Boatwright, 580 F.3d 653, 662-63 (7th Cir. 2009)).

The respondent also argues that the petitioner has failed to show how the circuit court's failure to directly ask him his educational level, rather than relying on the plea questionnaire, shows that he did not enter his plea knowingly, voluntarily and intelligently. Id. at 13. The respondent also emphasizes that the court asked the petitioner if he understood all sorts of things, and that the petitioner answered in the affirmative to most of those questions. Id. at 14.

Similarly, the respondent disputes the petitioner's argument that the court did not make sure that he understood the factual basis of the offense, or the elements. Id. at 15. The respondent points out numerous instances in which the court did ask such questions, as well as pointing out that the court asked the petitioner whether he'd reviewed the jury instructions and understood them. Id. The respondent opines that what the petitioner really seeks to argue is that he is not guilty of the offense to which he pled guilty, and the respondent urges the court to find otherwise. Id. at 15-16. The respondent points out that in the case on which the petitioner relies—Fagan v. Washington, 942 F.2d 1155 (1991)—the Seventh Circuit overturned a guilty verdict that resulted from a trial, whereas in this case, the petitioner pled guilty to the crime he now argues the facts did not support. Id. at 17.

As to the petitioner's argument that the circuit court unconstitutionally applied the party-to-a-crime statute to his case, the respondent points out that the petitioner did not raise this claim in his petition; he asserted it for the first time in his brief. Id. at 18-19. Second, the respondent argues that the petitioner procedurally defaulted on this claim, because the appeals court found that it was underdeveloped. Id. at 19.

Finally, the respondent argues that the court should not consider the petitioner's challenge to his sentence, because he did not raise it in his petition. Id. at 22. He also argues that the petitioner has failed to state a violation of due process or an Eighth Amendment violation regarding his sentence. Id. at 22-23.

C. The Petitioner's Reply

In his reply, the petitioner returns to his arguments that there was not sufficient evidence to show that he did anything to cause the victim's death. Dkt. No. 27 at 3. He states that "the entire case turns on whether [he] aided and abetted Omar Smith" in committing the homicide. Id. at 7. He spends most of his reply brief arguing that he did not aid and abet his co-defendant, and therefore, that his plea was not valid. Id.

D. The Court's Analysis

1. *Whether the Plea was Knowing and Voluntary*

The Seventh Circuit has noted that "[i]t is not easy to vacate a guilty plea in a collateral proceeding . . . ." United States v. Torzala, 545 F.3d 517, 521 (7th Cir. 2008). To prevail on his claim that the state appeals court erred in finding his plea valid, the petitioner must show that the appellate court's decision was (a) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (b) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254.

"It is beyond dispute that a guilty plea must be both knowing and voluntary." Parke v. Raley, 506 U.S. 20, 28 (1992). A guilty plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Id. at 29. "That is so because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination." Id. (citing Boykin v.

11

Alabama, 395 U.S. 238, 242 (1969)). Thus, a plea is voluntary and knowing if "entered by one fully aware of the direct consequences." Brady v. United States, 397 U.S. 742, 755 (1970) (citing Shelton v. United States, 246 F.2d 571, 572 n.2 (5th Cir. 1957)). "The voluntariness of [a defendant's] plea can be determined only by considering all of the relevant circumstances surrounding it." Id. at 749.

Under Wisconsin law, a court must do the following before accepting a guilty plea:

> (a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.
>
> (b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.
>
> (c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."
>
> (d) Inquire of the district attorney whether he or she has complied with s. 971.095 (2).

Wis. Stat. §971.08.

In affirming the circuit court, the state appellate court concluded that the petitioner had failed to "sufficiently identify defects in the plea colloquy." Dkt. No. 18-4 at 5. The petitioner had argued that the circuit court did not appropriately (1) assess his capacity to understand issues at the hearing (required by Wis. Stat. §971.08(1)(a)), (2) establish his understanding of the nature of the crime (also required by Wis. Stat. §971.08(1)(a)), and (3) ascertain

12

whether a factual basis existed to support the plea (not precisely what Wis. Stat. §971.08(1)(c) requires). Id. at 4-5.

The appellate court determined that the circuit court's inquiry into whether the petitioner reviewed a standard form detailing his educational history, the truthfulness of this form, and the petitioner's affirmative responses were adequate to allow the court to assess his capacity to understand issues. Id. at 5. The appellate court also noted that the circuit court had asked the petitioner about his consumption of alcohol or drugs in the past twenty-four hours, to confirm his comprehension. Id. The appellate court then found that the circuit court had ensured that the petitioner understood the nature of the crime in two ways: (1) it had explained each element of the offense, and the petitioner confirmed his understanding following this explanation; and (2) the petitioner had signed a copy of the jury instructions, which also explained the offense elements. Id. at 5-6. The circuit court further confirmed that the petitioner understood these documents when he signed them. Id. at 6. Finally, to ascertain whether a factual basis supported the plea, the circuit court had asked both defense counsel and the state whether the facts supported the plea; both had agreed that they did. Id. The court asked the petitioner if he read the complaint and if the facts were true, to which the petitioner answered "yes." Id. The appellate court concluded that the petitioner's post-conviction motion failed to identify any deficiency in the plea colloquy. Id. at 7.

There is no evidence that the state appellate court's ruling regarding the petitioner's educational level and ability to understand was "so lacking in

13

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. The appellate court considered the relevant circumstances of the plea, including the petitioner's own admissions that he understood the plea and that he was not under the influence of any drugs or alcohol. Dkt. No. 18-4 at 5-7. Although the appellate court based its assessment on Wisconsin law, its analysis was not contrary to federal law. See Early v. Packer, 537 U.S. 3, 8 (2002) (noting that §2254(d) does not require citation to U.S. Supreme Court cases, or even an awareness of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them"). The plaintiff has not demonstrated that he is entitled to *habeas* relief on this claim.

      2.    *Whether the Evidence Was Sufficient to Prove Party-to-a-Crime Liability*

In his brief, the petitioner argued that by finding him guilty of being a party to the crime of reckless homicide (and not allowing him to withdraw his guilty plea to that charge), the state court made a decision that was contrary to clearly established federal law. Dkt. No. 23 at 22. It is not clear to the court what clearly-established law the petitioner believes the state court violated. The petitioner's claims have to do with his view that he wasn't a party to a crime— that the elements for party-to-a-crime liability under Wis. Stat. §939.05 were not present. Id. Indeed, it was not clear to the state court of appeals, either; that court did not rule on this argument, because "[the petitioner] [did] not identify precisely what the unconstitutional application [was] . . . ." Dkt. No. 18-4 at 7-8.

The respondent correctly points out that the petitioner did not list this as one of the grounds for relief in his federal *habeas* petition. Dkt. No. 25 at 18-19. Judge Griesbach did not have the ability to screen that claim, or to determine whether the petitioner had exhausted his remedies on that claim. As the respondent correctly points out, a federal court does not have an obligation to address an issue that a petitioner does not raise. Toro v. Fairman, 940 F.2d 1065, 1066-67 (7th Cir. 1991).

Perhaps more to the point, the petitioner gave up the "ability to hold the government to its proof when he entered his guilty plea." Torzala, 545 F.3d at 524 (citing United States v. Broce, 488 U.S. 563, 571 (1989)). The Seventh Circuit has held that "the Constitution 'does not require the establishment in all cases of a factual basis for a guilty plea.'" Id. (quoting Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993)). The state court used the facts alleged in the complaint as the factual basis for the plea, and all parties agreed that those facts were sufficient. It is not impossible to find guilt from those facts, and the fact that the petitioner now questions whether they were sufficient is not a sufficient basis for this court to vacate his guilty plea on collateral attack.[1]

The petitioner has not shown that the appellate court's analysis was unreasonable or that the court's adjudication of the claim resulted in a

---

[1] The respondent also argued that the petitioner had procedurally defaulted on this claim, because the state court of appeals was unable to rule on the claim because the petitioner had not fully developed it. Dkt. No. 25 at 19, citing Dkt. No. 18-4 at 7-8. Because the petitioner waived this claim, the court will not analyze the procedural default argument.

decision based on an unreasonable determination of the facts. The petitioner is not entitled to *habeas* relief on this ground.

      3.    *Whether the State Court Provided Sufficient Justification for the Sentence It Imposed*

Finally, the petitioner argued in his brief (not his petition) that the state court did not provide sufficient justification for the sentence it imposed. The respondent again points out that the court does not have to reach this claim, because the petitioner did not raise it in his petition. Dkt. No. 25 at 22. Even if the court were to reach this issue, it would deny *habeas* relief. As another judge in this district has held, "[a]ny theoretical failure to apply Wisconsin sentencing standards is simply outside the realm of habeas relief." <u>Gallion v. Boatwright</u>, Dkt. No. 07-C-798, 2009 WL 310904 at *7 (E.D. Wis. Feb. 6, 2009) (citations omitted). The petitioner is not entitled to *habeas* relief on this ground.

## IV.    CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

The court concludes that its decision to not to grant the writ is neither incorrect nor debatable among jurists of reason. The state appellate court made a reasonable determination and that determination is consistent with federal law.

**V.     CONCLUSION**

The court **DENIES** the petitioner's §2254 petition. Dkt. No. 1. The court **DECLINES** to issue a certificate of appealability. The court **ORDERS** that the petition is **DISMISSED.**

Dated in Milwaukee, Wisconsin this 22nd day of June, 2017.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**